# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

In re:

William R. Meara,
Brenda J. Meara
     Debtors.

Case No.  14-12998-WCH

Chapter 7

### Motion of Chapter 7 Trustee For Authority To Sell Estate Property – Equity Interest in Vector/Meara Transit Advertising Group, LLC - at Private Sale Pursuant To 11 U.S.C. § 363

Warren E. Agin, (the "Trustee"), the chapter 7 trustee duly appointed to administer the bankruptcy estate of the above-named debtors (the "Debtors"), hereby moves this Court to enter an order pursuant to 11 U.S.C. §§ 105(a), 363, and 365, Fed. R. Bankr. P. 6004 and 6006, and MLBR 6004-1, authorizing the Trustee to exercise the estate's rights as the sole shareholder of Meara & Company LTD ("Meara & Co.") to sell, transfer and assign its interests in Vector/Meara Transit Advertising Group, LLC ("VMTAG"), and to sell claims of the estate, each at private sale free and clear of liens, claims, encumbrances and interests, and for related relief.  In support of this Motion, the Trustee states the following:

### Background

1.    On June 24, 2014, the Debtors filed their voluntary petition under Chapter 7 of the United States Bankruptcy Code.  Thereafter, the Trustee was appointed as interim trustee and continues to serve as chapter 7 trustee.

2.    Co-debtor William R. Meara ("Mr. Meara") owns 100% of the shares of

Meara & Co., a Massachusetts corporation. Meara & Co. holds a 10% equity interest in VMTAG (the "Equity Interest"). In addition to its economic interest in VMTAG, Meara & Co. has rights under the Operating Agreement for the LLC.

3.     The remaining equity in VMTAG is privately held by Las Vegas Transit Advertising, LLC (the "Majority Member") and is not publically traded.

4.     In his Schedule B, filed with the Court on August 7, 2014, Mr. Meara listed his interest in Meara & Co. without stating a value, and separately listed a bank account for Meara & Co. containing $100 on the filing date. In addition to holding Mr. Meara's interest in VMTAG, Mr. Meara had used Meara & Co. for his consulting work, but testified at his meeting of creditors that Meara & Co. was no longer active. Based on the Debtor's schedules, testimony, and tax returns, the Trustee believes that VMTAG is Meara & Co's sole material asset. According to the Debtor's schedules, Meara & Co. is a co-debtor with Mr. Meara on a 2006 judgment held by Credit Suisse First Boston for $29,838.21, plus interest, but the Trustee believes that it has no other material debt obligations.

5.     In his Schedule B, Mr. Meara listed an interest in VMTAG, also without a stated value.

6.     In his Schedule B, Mr. Meara listed as an asset a disputed "[c]laim against Vector Media Advertising Group for breach of contract" with an approximate value of $100,000 (the "Debtor's Claim"). The Debtor's Claim is not presently the subject of litigation.

7.     The Trustee seeks authority to exercise the estate's rights as the sole stockholder of Meara & Co. to sell, transfer and assign Meara & Co.'s right, title and interest in VMTAG, and sell, transfer and assign the Debtor's Claim (collectively, the Asset).

8.     The Trustee also seeks authority to dissolve Meara & Co. on completion of the sale.

9.     Mr. Meara has not claimed an exemption in either VMTAG or Meara & Co., but he has claimed an exemption in the Debtor's Claim in the amount of $10,982.31 (the "Exemption"). Notwithstanding any allocation of sale proceeds, and recognizing the Debtor's right to freely amend his exemptions, the Trustee seeks authority to pay Mr. Meara $10,982.31 on account of the claimed exemption from the sale proceeds the estate will receive after Meara & Co. is dissolved.

## The Purchase Offer

10.     Following negotiations between the parties, the Trustee has received and, subject to Court approval, accepted an offer from Partnership Liquidity Investors II, LLC (the "Buyer") to purchase the Asset for a cash payment of $250,000.00 (the "Purchase Price").  The terms of sale are set forth in the sale agreement (the "Sale Agreement") attached as Exhibit A.  As a deposit, the Buyer has delivered $25,000.00 to the Trustee, who is holding such funds in escrow pending Court approval of the sale.

11.     The Sale Agreement requires the Trustee to pay the Buyer a break-up

fee of $12,500 within seven business days of a closing of a sale of the Asset to a third party other than the Buyer.  The break-up fee provision is subject to Court approval, equals 5% of the Purchase Price, and is reasonable given the need for the Buyer to conduct due diligence regarding the Asset. Pursuant to Local Rule of Bankruptcy Procedure 6004-1(c)(2), the Trustee seeks authority to pay the break-up fee in the event of a sale of the Asset to a third party.

12.    The Trustee desires to sell the estate's interests in the Asset "as is," "where is" and "with all faults."

13.    The Trustee intends to sell, transfer and assign the Asset free and clear of all liens, claims, encumbrances and interests (the "Claims") pursuant to 11 U.S.C. §§ 363(f) and 365.  Such Claims, if any, shall, to the extent valid and perfected, attach to the proceeds of the sale in their respective orders of priority and shall be paid as provided herein. Holders of Claims who do not object to the proposed sale will be deemed to have consented to the sale. The Internal Revenue Service has filed a proof of claim asserting a tax lien in the amount of $11,350.50 against the Debtors' assets. The Trustee is not aware of any other holders of liens, claims, encumbrances or competing interests in the Asset.

14.    Absent an objection, the consent of the holder of a Claim can be implied from the circumstances of the sale. Generally, creditors who fail to object to the terms of a proposed sale are deemed to have waived their rights and are bound by the resulting sale order. *See, In re Allegheny Health Educ. and Research*

*Foundation*, 383 F.3d 169, 177-178 (3rd Cir. 2004).

15.    VMTAG's operating agreement (the "Operating Agreement") contains provisions restricting assignment of a member's interest. Section 9.1 restricts a member from transferring its interest to a third party without the consent of VMTAG's Majority Member.

16.    VMTAG and the Majority Member have received advance notice of the proposed sale and have cooperated with the Trustee's efforts to market the Asset for sale.  The Majority Member has made an offer to purchase the Asset, but at a price significantly less than the Purchase Price. The Majority Member also has not indicated an intention to object to the sale.

17.    In the event the Majority Member refuses to consent to the proposed sale, or a sale to a third party bidder, and the Court holds that its exercise of rights prohibits transfer notwithstanding 11 U.S.C § 365(f)(1),[1] the Trustee seeks authority to sell, assign and transfer only the economic interest associated with Meara & Co.'s membership interest in VMTAG, along with the Debtor's Claim. The Buyer has agreed to this restriction on the scope of assets being sold.

18.    Alternatively, the Trustee and the Buyer are agreeable to bidding procedures that grant the Majority Member rights equivalent to a right of first refusal, provided: (a) the Majority Member indicates its intention to counter-offer

---

[1]  Pursuant to 11 U.S.C. § 365(f)(1), the restrictions on the transfer of the Asset contained in the Operating Agreement are not enforceable here as enforcement could prevent the bankruptcy estate from realizing the full-value of its assets by creating delay and by discouraging prospective buyers and competitive bidding for the Asset.  *See In re Chicago Investments, LLC.,* 470 B.R. 32, 88-90 (Bankr. D. Mass. 2012).

$250,000 by the deadline for objections or counter-offers; (b) the Majority Member

provides the Trustee by that date a deposit for $25,000; and (c) and the bidding

procedures used at the court hearing allow the Buyer, and third party bidders, an

opportunity to overbid each exercise of such right of first refusal by the Majority

Member initially and during the court hearing.

19.    The Trustee believes that the Buyer's offer is fair and reasonable. The

Trustee assembled detailed financial and operational information about VMTAG

with its cooperation, and marketed the Asset on the MarketAssetsForSale.com

website maintained by National Association of Bankruptcy Trustees and on a

website maintained by the Trustee. Information packages were provided to nine

different interested parties under a non-disclosure agreement, and the Trustee

received four offers, including those from the Buyer and the Majority Member. The

Buyer's offer was the highest and best offer received.  The Trustee believes that the

Buyer's offer will provide the estate with a greater net benefit than any other

method of liquidating the asset, including a sale by public auction.  Because

VMTAG is privately held and the Equity Interest is not publically traded, the Asset

is not an entirely liquid asset and likely not to generate competitive bidding at

public auction. Further, the need to provide financial information under non-

disclosure agreements limits the ability to sell the Asset through a public auction.

20.    The Trustee has also assessed the Debtor's Claim. Mr. Meara had

formerly performed work for VMTAG and had received regular payments from

VMTAG. The claims appear related to the method by which his work relationship with VMTAG ended, and his assertion that VMTAG failed to provide him with financial information related to its operations. The Trustee reviewed documents and summaries provided by Mr. Meara and also conducted an informal discussion at length with Mr. Meara regarding the asserted claims. The Trustee also requested and obtained financial documents from VMTAG for relevant periods of time. Mr. Meara's contractual relationship with VMTAG appears limited to the 10% membership interest and rights under the Operating Agreement. The information available to the Trustee does not indicate that VMTAG withheld from Mr. Meara any distributions to which he was entitled.

21.    Based on his review of the material and information the Trustee has concluded that retaining and pursuing any potential claims against VMTAG would not be in the estate's best interest, and, in fact, could reduce the sale value of the Equity Interest. Instead, the Trustee concludes that the estate should transfer the Debtor's Claim to the Buyer, along with the Equity Interest, so that the Buyer has the full benefit of that interest.

22.    As a result, the Trustee believes that the sale of the estate's interest in the Asset as set forth herein is in the best interests of the Debtors' estate and its creditors.

## General Provisions

23.    The Trustee will consider higher and better counter-offers for the Asset

provided that the price offered is at least $262,500.00.  Higher offers must be on

similar terms and conditions provided in this motion, other than the Purchase

Price, with any required variations identified in the counter-offer.  Further, any and

all counter-offers for the Asset must be accompanied by a deposit of $25,000.00.  In

the event that a hearing is held with respect to this motion, and the sale is not

timely completed by the buyer approved by the Court, the Court, without further

hearing, may approve the sale of the Asset to the next highest bidder. To facilitate

completion of the sale, the Trustee requests that the order authorizing the sale be

effective immediately, notwithstanding Fed. R. Bank. P. 6004(h).

24.    Should the Court grant this motion, the Trustee requests that this

Court grant him the authority to perform all relevant tasks required to exercise his

rights as the 100% stockholder of Meara &Co. to properly effect the sale and

transfer the Asset, and to dissolve Meara & Co. after the sale closes, including

following dissolution procedures applicable under Massachusetts state law.

25.    Finally, the Trustee seeks authority to assign the collected non-

disclosure agreements to VMTAG following the close of the proposed sale. The non-

disclosure agreements state that they are assignable to VMTAG.

26.    The Trustee proposes to serve this motion on the Debtors, Debtors'

counsel, the United States Trustee's Office, any known creditor claiming a lien or

security interest in the Asset, any counsel to such creditor, the Buyer, all attorneys

who have filed appearances in this case, counsel for VMTAG, and counsel for the

Majority Member.

27.    The Trustee requests that this Court approve the proposed Notice of Intended Private Sale filed herewith.  The Trustee proposes to serve such Notice on all of the Debtors' listed creditors, counsel for VMTAG, counsel for the Majority Member, the United States Trustee, all federal, state and local taxing authorities, all parties or their counsel who have filed an appearance in this case or who have requested service of notices in this case, the Buyer, all parties that have expressed to the Trustee their interest in acquiring the Asset, and other potential purchasers of the Asset known to the Trustee, by first-class mail, postage prepaid (or e-mail in the case of potential purchasers having communicated with the Trustee by e-mail), immediately upon the Trustee being informed of the dates established by the Court for a hearing on this motion and the time for filing objections and submitting counter-offers therefore, as provided in the Notice.

WHEREFORE, the Trustee respectfully prays that this Court enter an order:

1.    approving the Notice of Intended Private Sale filed  herewith;

2.    determining that notice shall be sufficient if served in accordance with this motion;

3.    authorizing the Trustee to sell, assign and transfer the Asset, free and clear of liens, claims, encumbrances and interests, all as set forth in this Motion and the attached Exhibit A;

4.    directing that all Claims (as defined herein), to the extent valid and perfected, shall attach to the proceeds of the sale, in their respective orders of priority, to be paid as set forth herein or as otherwise determined by this Court;

5.     authorizing and empowering the Trustee to exercise his rights as the sole shareholder of Meara & Co. to conduct the sale of the Asset to the buyer; including the authority to perform all relevant tasks and the authority to dissolve Meara & Co. after the sale closes;

6.     authorizing and empowering the Trustee, in the event that VMTAG or the Majority Member successfully objects to this sale, to sell the Estate's economic interest in VMTAG to the buyer approved by the Court in lieu of rights under the Operating Agreement;

7.     authorizing and empowering the Trustee to take such further actions as are necessary, appropriate or desirable to consummate the transactions provided for or contemplated by this Motion;

8.     authorizing the Trustee to pay a break-up fee of $12,500.00 to the Buyer should the Court approve a sale of the Asset to a third party other than the Buyer or its assignee and such sale closes;

9.     authorizing the Trustee to pay Mr. Meara $10,982.31 from the sale proceeds received by the estate after Meara & Co. is dissolved on account of his claimed exemption in the Debtor's Claims;

10.    authorizing the Trustee to transfer and assign the non-disclosure agreements to VMTAG on completion of the sale;

11.    that the order authorizing the sale shall be effective when entered by the Court, notwithstanding Fed. R. Bankr. P. 6004(h); and

12.    granting such other and further relief as this Court deems just and proper.

Dated: May 18, 2015.

Warren E. Agin, as Trustee,
By his Attorney,


/s/ Thomas M. Richardson
Thomas M. Richardson (BBO 601014)
**Swiggart & Agin, LLC**
197 Portland Street
Boston, MA 02114
(617) 742-0110 x204
tmr@swiggartagin.com

# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

In re:

William R. Meara,
Brenda J. Meara,
      Debtors.

Case No.  14-12998-WCH

Chapter 7

**Notice Of Intended Private Sale Of Estate Property and Notice of Intended Assignment of Contracts, Deadline For Submitting Objections And Higher Offers, And Hearing Date**

_____     **IS THE DATE OF THE SALE HEARING**

_____     **IS THE DATE BY WHICH OBJECTIONS OR COUNTEROFFERS MUST BE MADE**

**Notice is hereby given**, pursuant to 11 U.S.C. §§ 105(a), 363, 365, Fed. R. Bankr. P. 2002(a)(2) and 6004, and MLBR 2002-5 and 6004-1, that Warren E. Agin, the duly appointed chapter 7 trustee (the "Trustee") of the bankruptcy estate of the above named debtors (the "Debtors"), intends to sell at private sale the Debtor's right, title and interest in certain property of the estate.

**Property to be Sold:**

Meara & Company, LTD's right, title, and interest in and to Vector/Meara Transit Advertising Group, LLC and the estate's "[c]laim against Vector Media Advertising Group for breach of contract" (collectively, the "Property"). Interested parties may obtain additional due diligence materials from the Trustee on delivery of an executed non-disclosure agreement.

**The Offer:**

The Trustee has received an offer to purchase the estate's interest in the Property for the sum of $250,000.00 (the "Purchase Price").

**The Proposed Buyer**:

The proposed buyer is Partnership Liquidity Investors II, LLC (the "Proposed Buyer") with a last-known address of 416 9th Street, Huntington Beach, California.

**The Sale Date:**

The sale shall take place at the Trustee's office within 3 business days following the entry of an Order approving the sale by the United States Bankruptcy Court.  The Proposed Buyer has delivered to the Trustee a deposit of $25,000.00, which the Trustee is holding in escrow.  The terms of the proposed sale are more particularly described in a *Motion of Chapter 7 Trustee For Authority To Sell Estate Property – Equity Interest in Vector/Meara Transit Advertising Group, LLC - At Private Sale Pursuant To 11 U.S.C. § 363* (the "Motion to Approve Sale") filed with the Court on or about May 18, 2015, and a written purchase and sale agreement dated May 6, 2015. The Motion to Approve Sale and the purchase and sale agreement are available at no charge upon request from the undersigned.

**Sale Free and Clear of Liens:**

The Property will be sold free and clear of all liens, claims encumbrances and interests pursuant to 11 U.S.C. §§ 363(f) and 365. The Internal Revenue Service has filed a proof of claim asserting a tax lien in the amount of $11,350.50 against the Debtors' assets. The Trustee is not aware of any other liens, encumbrances or other interests in the Property.

**Counteroffers or Objections:**

Any objections to the sale, higher offers, or requests for hearing on the matter, shall be filed in writing with the Clerk, United States Bankruptcy Court at 5 Post Office Square, Suite 1150, Boston, MA 02109 on or before _____ at 4:30 AM / PM (the "Objection Deadline").  A copy of any objection or higher offer also shall be served upon the undersigned.  Any objection to the sale must state with

particularity the grounds for the objection and why the intended sale should not be authorized.  Any objection to the sale shall be governed by Fed. R. Bankr. P. 9014.

Through this Notice, higher offers for the Property are hereby solicited.  Any higher offer must be at least $262,500.  Higher offers must be filed with the Court, and a copy, accompanied by a deposit of $25,000 in the form of a certified or bank check made payable to "Warren E. Agin, chapter 7 trustee", served on the Trustee by delivery to his counsel to the address at the end of this notice.  Higher offers must be on the similar terms and conditions provided in the Motion to Approve Sale and the purchase and sale agreement, other than the Purchase Price, with any material variations expressly disclosed.

**Hearing**:

A hearing on the Motion to Approve Sale, objections or higher offers is scheduled to take place on _____ at _____ AM / PM before the Honorable Judge Hillman, United States Bankruptcy Judge, 5 Post Office Square, Suite 1150, Boston, MA 02109.  Any party who has filed an objection or higher offer is expected to be present at the hearing, failing which the objection will be overruled or higher offer stricken.  If a higher offer is filed with the Court prior to the deadline stated above, the Court may, in its discretion at the hearing on the Motion to Approve Sale, conduct one or more rounds of sealed or open bidding. The Court may take evidence at any hearing on approval of the sale to resolve issues of fact. If no objection to the Motion to Approve Sale or higher offer is timely filed, the Court, in its discretion, may cancel the scheduled hearing and approve the sale without hearing.

At the hearing on the sale, the Court may (i) consider any requests to strike a higher offer; (ii) determine further terms and conditions of the sale; (iii) determine the requirements for further competitive bidding; and (iv) require one or more

rounds of sealed or open bids from the original offeror and any other qualifying offeror.

**Deposit:**

The deposit will be forfeited to the estate if the successful purchaser fails to complete the sale by the date ordered by the Court.  If the sale is not completed by the buyer approved by the Court, the Court, without further hearing, may approve the sale of the Property to the next highest bidder.

Any questions concerning the intended sale shall be addressed to the undersigned.

Dated: May 18, 2015.

Warren E. Agin, as Trustee,
By his Attorney,

/s/ Thomas M. Richardson
Thomas M. Richardson (BBO 601014)
**Swiggart & Agin, LLC**
197 Portland Street
Boston, MA 02114
(617) 742-0110 x204
tmr@swiggartagin.com