# EXHIBIT A

# PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (this "*Agreement*") made as of the __5th__ day of __May__, 2015, by and between Warren E. Agin, Chapter 7 Trustee of the estate of William Meara and Brenda Meara (the "*Seller*" or the "*Trustee*") in Case No. 14-12998-WCH, pending before the United States Bankruptcy Court for District of Massachusetts and Partnership Liquidity Investors II, LLC, of California, with its headquarters located at 416 9th Street, Huntington Beach, CA 02648 (the "*Buyer*").

*Whereas*, on June 24, 2014, William Meara and Brenda Meara (the "*Debtors*"), filed a voluntary bankruptcy case pursuant to Chapter 7 of Title 11 of the United States Code (the "*Bankruptcy*");

*Whereas*, on June 25, 2014, the Trustee was appointed as Chapter 7 Trustee of the said bankruptcy case;

*Whereas*, William Meara (the "*Mr. Meara*") is the sole owner of Meara & Company, LTD (the "*Meara & Co.*"), and through Meara & Co. owns or controls a 10% equity interest in Vector/Meara Transit Advertising Group, LLC, a Delaware limited liability company ("VMTAG"), and Mr. Meara and/or Meara & Co. may hold the right to bring certain claims against certain parties as a result of said interest (the said interest and claims being referred to hereinafter as the "*Purchased Assets*"), and

*Whereas*, the Trustee wishes to sell, transfer and assign, and the Buyer wishes to purchase, all the Trustee's right, title and interest in and to the Purchased Assets, all upon the terms and conditions set forth herein;

*Now, therefore*, subject to Bankruptcy Court approval, the SELLER and BUYER agree as follows:

1. *Assets.* The Trustee agrees to sell, transfer and assign all of his right, title and interest in, and the Buyer agrees to buy the Purchased Assets.

2. *Assumption of Liabilities.* It is expressly understood that Buyer shall not assume any debt, obligation or liability of the Seller or the Debtors of any kind, character or description, except those directly related to the Purchased Assets. Further, the Buyer shall not assume any guaranties or indemnities given in connection with any loans to real property, companies or partnerships.

3. *Purchase Price.* The Buyer agrees to pay to the Trustee as a total purchase price for the Purchased Assets, the sum of Two Hundred and Fifty Thousand ($250,000) in consideration for the sale and transfer of the Purchased Assets (the "*Purchase Price*"), payable as follows:

    (a) The sum of Twenty-Five Thousand Dollars ($25,000) in good funds as a deposit on the Purchase Price (the "*Deposit*"), paid to the Trustee herewith, to be held by the Trustee in escrow in a non-interest bearing account pending the Closing, with such amount to be credited to the Purchase Price; and

(b) The sum of Two Hundred and Twenty-Five Thousand Dollars ($225,000) in good funds, payable to the Trustee on the Closing Date (as defined below).

The Deposit shall be refunded promptly only if: (a) the Trustee fails to comply with the terms of this Agreement; after a hearing in which the Buyer participates in good faith, the Bankruptcy Court either (i) denies the Motion to Sell (as defined below), or (ii) enters an order allowing the sale of the Purchased Assets to a party other than the Buyer; or (c) the Trustee is unable to obtain satisfaction, waiver, or abrogation of the required consent pursuant to section 9.1 of the VMTAG operation agreement and the transaction fails to close as a result. If the Motion to Sell to the Buyer is approved by the Bankruptcy Court and (i) the Buyer fails to pay any of the remaining amounts of the Purchase Price pursuant to section 3(b), provided that failure to pay the balance is not a result of a breach by the Trustee, or (ii) the Buyer otherwise breaches the terms hereof, then the Trustee shall retain the Deposit as his sole liquidated damages based on such breach (other than a breach caused by a violation of 11 U.S.C. § 363(n)), and shall be free to sell the Purchased Assets to another party. In the event of such breach by the Buyer, the Buyer shall not be liable for any additional damages associated with such breach.

4. *Liens, etc.* The Trustee will sell the Purchased Assets free and clear of all liens, leases, claims, encumbrances and adverse interests and rights.

5. *Order Authorizing Sale.* As a condition precedent to the Buyer's obligations hereunder (with the exception of the Buyer's obligation to provide the Deposit), the sale of the Purchased Assets from Seller to Buyer pursuant to this Agreement must be approved by a final, non-appealable order of the Bankruptcy Court (the "Sale Order") in a form satisfactory to Buyer.

6. *Counter-Offers.* In connection with this Agreement, the Buyer acknowledges and agrees that the Trustee may solicit counter-offers for the sale of the Purchased Assets. Subject to the Bankruptcy Court's review and approval, the Trustee may, in his sole discretion, determine at the Sale Hearing which offer to buy the Purchased Assets is, in his business judgment, the highest and best offer and that which is in the best interests of the estate.

7. *Co-Purchase.* Buyer is aware that he may be subject to an obligation of co-purchase pursuant to section 9.7 of the VMTAG operating agreement.

8. *Authority to Execute.* The individuals signing this Agreement on behalf of the Buyer (and subject to Court approval, the Seller) affirmatively represent and warrant that they have been authorized to do so, and to bind the Buyer (and the estate, subject to Court approval) to all of the terms and conditions hereof.

9. *Bankruptcy Court Approval.* The obligations of the Trustee to sell, assign and transfer the Purchased Assets, and the obligations of the Buyer to purchase the Purchased Assets, are expressly conditioned upon the approval by the Bankruptcy Court of the *Motion of Chapter 7 Trustee For Authority To Sell Estate Property At Private Sale Pursuant To 11 U.S.C. § 363* (the "*Motion to Sell*") at the Purchase Price or at a higher price subsequent to an auction which may be held with

individuals or entities who submit counteroffers acceptable to the Trustee, and in accordance with the terms and conditions set forth herein. The Motion to Sell will seek an order requiring that counteroffers be for at least $262,500. The Buyer is aware that the Trustee will provide advance notice of the Motion to Sell (the "*Notice of Sale*") to all creditors and other entities selected by the Trustee, who in turn may object to this proposed sale or submit counteroffers in accordance with the provisions hereof.

10. *Representations; Warranties; Waiver.*

    (a)  The Purchased Assets are being sold "AS IS" and "WHERE IS" without any representations or warranties, express or implied, including WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, with the exception that the Trustee warrants that he has the right, subject to Bankruptcy Court approval, to transfer the estate's rights, title and interest in and to the Purchased Assets. These representations and warranties shall survive the closing of the sale of the Purchased Assets.

    (b)  Buyer hereby waives any claim or recourse he may have against the Seller that any restriction on the transfer of shared of stock may apply to the said transfer, and hereby holds the Seller harmless for any failure to comply with such restriction(s).

11. *Closing.* A closing of the transactions contemplated hereby (the "*Closing*") shall take place at the office of the Trustee within three (3) business days immediately following the day that the Bankruptcy Court enters the Sale Order (the "*Closing Date*"), which order shall (i) not be subject to an appeal and/or any stay pending appeal, or (ii) contain an express waiver of the stay provisions imposed by Rule 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, or such order's appeal period shall have expired (a "*Final Order*"). At the Closing, the Trustee shall execute and deliver all documents reasonably necessary to effect the transfer of the Purchased Assets in form and substance satisfactory to Buyer, and simultaneously therewith the Buyer will deliver the next payment to the Seller as provided by section 3(b). The Seller agrees to reasonably cooperate with the Buyer after the Closing Date in order to provide any additional documents needed in order to effectuate the sale of the Purchased Assets to Buyer. The Buyer shall be responsible for all filing fees, transfer charges and all other fees and expenses necessary to effectuate the sale of the Purchased Assets.

12. *Nonrecourse.* The Trustee is executing this Agreement in a fiduciary capacity, only the Debtors' estate shall be bound and the Trustee shall not be personally liable for any obligation, expressed or implied, hereunder.

13. *Assignment.* Provided that the Buyer has first obtained written approval from the Trustee, the Buyer may assign its rights and obligations hereunder, subject to any applicable limitations on assignment or transfer contained in the VMTAG operating agreement, without the need of further approval from the Bankruptcy Court.

—3—

14. *Advice of Counsel.* Each of the Trustee and the Buyer confirms that he or it (as applicable) has obtained the advice of counsel of his or its (as applicable) choice in connection with the execution hereof.

15. *Broker's and Finder's Fees.* The Seller and the Buyer each represent that they have not employed any broker or incurred any liability for any brokerage fee, commissions, or finder's fee in connection with the transaction contemplated hereby.

16. *Breakup Fee.* In the event that the Court approves a sale of the Purchased Assets to a third party other than the Buyer or its assignee, and such sale closes, the Seller shall pay the Buyer the sum equal to five percent (5%) of the Purchase Price as a break-up fee within seven business days of the Closing. This provision shall be subject to Court approval and the Trustee shall seek such approval in the Motion to Sell.

17. *Miscellaneous.*

    (a) The Buyer acknowledges that the Trustee is not selling any leasehold interest or any rights related to any lease for any real property as part hereof.

    (b) This Agreement constitutes the complete agreement and understanding of the parties hereto with respect to the transactions contemplated hereby and supersedes all prior agreements and understandings, written or oral, and may be amended only by written instrument signed by both of them.

    (c) This Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors, heirs, assigns and trustees.

    (d) This Agreement may be executed in one or more counterparts, each of which may be introduced as evidence or used for any other purpose without any other counterpart, all of which together shall constitute one in the same agreement.

    (e) To the extent that there is any conflict between the terms hereof and the Notice of Sale, served in accordance with Section 363 of the United States Bankruptcy Code, the terms hereof shall control.

    (f) This Agreement shall be construed in accordance with the laws of the Commonwealth of Massachusetts and the United States Bankruptcy Code.

IN WITNESS WHEREOF, the parties have executed this Agreement in two counterparts on the day and year first above written.

The Buyer hereby agrees to purchase on the terms set forth above.

PARTNERSHIP LIQUIDITY INVESTORS II, LLC

By: _____
Jerome A. Fink, Manager

Witness: _____

Signed on: _____   Signed on: May 5, 2015

The Trustee agrees to sell and transfer on the terms set forth above.

Witness: _Jean Langton_

Signed on: _May 6, 2015_   

Warren E. Agin, as Chapter 7 Trustee and not individually

Signed on: _May 6, 2015_

—5—