## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>William R. Meara,<br>Brenda J. Meara<br>    Debtors. | Case No.  14-12998-WCH<br><br>Chapter 7 |

### Response of Chapter 7 Trustee to Las Vegas Transit Advertising, LLC's Objection to Sale Motion and Motion to Strike Bid

Warren E. Agin, (the "Trustee"), the chapter 7 trustee duly appointed to administer the bankruptcy estate of the above-named debtors (the "Debtors"), hereby responds as follows to Las Vegas Transit Advertising, LLC ("LVTA")'s objection to the "Motion of Chapter 7 Trustee For Authority To Sell Estate Property – Equity Interest in Vector/Meara Transit Advertising Group, LLC - at Private Sale Pursuant To 11 U.S.C. § 363" (the "Sale Motion"). The Trustee also moves to strike LVTA's Counter-bid.

1.  William R. Meara ("Mr. Meara") owns 100% of the shares of Meara & Co., a Massachusetts corporation. Meara & Co. holds a 10% equity interest in VMTAG (the "Equity Interest"). In addition to its economic interest in VMTAG, Meara & Co. has rights under the Operating Agreement for the LLC. LVTA owns the remaining 90% membership interest under the Operating Agreement.

2.  The Trustee has entered into a formal Purchase and Sale Agreement (the "Sale Agreement") to sell the Equity Interest and related assets to Partnership Liquidity Investors II, LLC (the "Buyer") for a cash payment of $250,000.00 (the

"Purchase Price"). The Trustee submitted the Sale Agreement to the court for approval on May 19, 2015. The Buyer is owned by Jerome A. Fink, and he is identified in the Sale Agreement as the Buyer's manager.

3. LVTA presents the following objection to the proposed sale, asserting that the Trustee cannot pursue the proposed sale. Alternatively, in the event the Court allows the sale to proceed, LVTA has submitted a $250,000 counter-offer and delivered a $25,000 deposit to bind that offer.

4. The Trustee addresses the specific objections, as follows:

**LVTA Claims the Trustee can't sell the Equity Interest free of "advances of distributions"**

5. The Trustee is not seeking to sell the Equity Interest free of "advances of distributions."

6. VMTAG, as a partnership based LLC, maintains separate capital accounts for its two members. While Mr. Meara was actively involved through about August 2013 in building VMTAG's business, during certain periods when capital distributions were not being made to VMTAG's members VMTAG paid Mr. Meara $6,900.00 a month. The payments were not booked as compensation, but instead were booked as advances on distributions, thus lowering the value of Mr. Meara's capital account and resulting in a negative capital account. In August 2013, VMTAG ceased the payments and Mr. Meara's active involvement in the business apparently ended. The financial information provided by VMTAG to the Trustee and provided to potential buyers reflects the negative capital account.

7.  The capital account balance associated with the membership interest is an integral part of the Asset and the Trustee is not attempting to sell the Asset free and clear of the capital account adjustments.

**LVTA Claims the Trustee can't sell the Equity Interest using 11 U.S.C. § 363 or assume or assign rights under the Operating Agreement using 11 U.S.C. § 365 because the Equity Interest is not estate property**

8.  Because the Trustee controls Meara & Co., he can sell the Equity Interest indirectly, acting as the sole stockholder of Meara & Co. LVTA lacks standing to object to the Trustee's use of 11 U.S.C. § 363 in this context, except to the extent that it diminishes or affects its rights.

9.  Meara & Co. is a Massachusetts corporation set up by Mr. Meara for the sole purpose of his consulting work and the Equity Interest is its sole asset. Mr. Meara is the only owner of the stock and testified that the company is no longer active. The Trustee seeks authority under 11 U.S.C. § 363 to use his ownership interest in Meara & Co. to sell the Equity Interest, and then use state court dissolution proceedings to recover excess funds for the estate. Mr. Meara has not objected to this part of the process. *In re Katz*, 341 B.R. 123 (Bankr. D. Mass. 2006), cited by LVTA, does not apply in the present case. In that case the chapter 7 trustee held only a 10% interest in the partnership he was attempting to control and dissolve, the partnership was active, and the other partners in the company opposed the trustee's actions.

10. The Trustee concedes that 11 U.S.C. § 365 provisions can't apply to the

Operating Agreement and its treatment in this particular sale process. However, as described below, these provisions are not actually needed to allow the proposed sale to proceed. VMTAG is a Delaware LLC and applicable case law allows a transfer of a bare economic interest in a Delaware LLC despite consent provisions. This treatment is acceptable to the Buyer.

11.     Delaware case law differentiates between a full membership interest in an LLC, and the bare economic interest related to the membership interest. A transfer of an LLC membership interest does not automatically make the transfer a member, but remains valid as a transfer of a bare economic interest.  6 Del. C. § 18-702(b); *Achaian, Inc. v. Leemon Family LLC*, 25 A. 3d 800, 809 (Del. Ct of Chancery 2011). For example, where a debtor was barred from transferring its full membership interest in the LLC due to a consent provision, the debtor retained its ongoing right to profits and losses and could transfer that bare economic interest. *In re IT Group, Inc.*, 302 B.R. 483, 487 ("Under 6 Del. C. § 18-702(b)(2), the members of an LLC are permitted to assign their bare economic interests to another entity.") *Also, see, Milford Power v. PDC Milford Power*, 866 A.2d 738 (Del. Sup. Ct. 2004)(discussing the *IT Group* decision).

### LVTA Claims the Trustee Can't Sell the Equity Interest Because of the Right of Consent

12.     Section 9.1 of the Operating Agreement prohibits a member from transferring its interest without LVTA's consent (LVTA is both the Manager and the Managing Member of the LLC). The provision does not prevent the sale because

it can be deemed waived and because, as stated above, under Delaware law a transfer of an LLC interest in violation of a consent provision is not void, it is merely limited to the economic interest in the LLC.

13.    Under Delaware law the consent provision must still be exercised in good faith. *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. Supreme Ct. 2010)(implied duty of good faith and fair dealing requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain.) LVTA has had more than sufficient time to inquire of the Buyer and determine whether or not it has a basis for objecting to the proposed Buyer. It has not done so. Instead it takes the position that the Trustee is completely unable to sell the Equity Interest because of the consent provision. Under these circumstances, the right of consent should be waived.

14.    A sale of the bare economic interest does not require consent. For example, in In re IT Group, Inc., the Delaware Bankruptcy Court held that even though a debtor could not transfer is membership rights in an LLC without the remaining members' consent; it could assign its bare economic interest. *See, In re IT Group, Inc. Co.*, 302 B.R. 483, 485 (D. Del. 2003)(affirming the decision below)("Northrop also contends that the Bankruptcy Court correctly concluded that the Debtors could assign their bare economic interest to Shaw…")

## LVTA Claims the Trustee can't sell the Equity Interest Because of a Right of First Refusal

15.  There is no right of first refusal in the Operating Agreement.

16.  A right of first refusal is a provision that requires an LLC member who wants to sell its interest, and receives a purchase offer for a set price, to first offer to sell to the non-selling member for that price.

17.  The provision LVTA claims is a right of first refusal, reads as follows:

> SECTION 9.7.  If at any time a Member desires to, directly or indirectly, sell or otherwise transfer its membership interest (the "Offered Interest") in the Company (any such transaction, whether or not for consideration, being referred to hereinafter as a "Transfer" and such acquiring person being referred to as an "Offeree"), no such Transfer shall be made or closed or effected, unless the Offeree shall offer, in writing to the other Member, to purchase the membership interest of such Member at the same price offered by the Offeree to purchase the Offered Interest.

18.  This is not a right of first refusal. It states that before the selling member can sell its interest to a buyer for a set price, the buyer must first offer to buy the non-selling member's interest for the same price. This is a "tag-along right" and is generally intended to protect the minority member.[1] It protects the minority member from a situation where the majority member effectively sells the entire company through a stock purchase agreement for just its interest, cutting the minority member from the deal. It does not apply to this transaction, nor, unless LVTA indicates an actual desire to sell its 90% interest in VMTAG for the offered price, should the Court countenance its use of the provision in attempting to derail the Trustee's sale efforts.

---

[1] Investopia. See http://www.investopedia.com/terms/t/tagalongrights.asp (viewed June 16, 2015).

**Motion to Strike Counter-Bid**

19. The Trustee moves to strike LVTA's $250,000 counter-bid because (a) it was not presented in good faith, and (b) it does not conform to the sale terms.

**The Counter-Bid Is Not Presented in Good Faith**

20. LVTA has given the Trustee the appearance of cooperating in the Trustee's sale process, while planning to use its operating agreement provisions to derail the sale process at the end in order to try to reacquire the Equity Interest for a nominal value.

21. The Trustee had working with VMTAG, controlled by LVTA, to obtain the information needed to market the sale to third party purchasers, and kept VMTAG informed of its marketing efforts. VMTAG was represented by Morgan, Lewis, as is LVTA.  VMTAG cooperated in that process. In March, when the Trustee solicited purchase offers, the solicitation documents were provided to VMTAG's counsel. The Trustee was soliciting a minimum bid of $250,000. LVTA initially did not submit any offers, but it also did not object to the planned sale process or insist on any conditions to the sale.

22. In April, when the Trustee was in the process of negotiating the terms of the sale with the Buyer, Trustee's counsel contacted VMTAG's counsel to see if he could ascertain whether they had concerns over the sale process, and attempt to negotiate a resolution of such concerns before the sale agreement was finalized. VMTAG did not indicate at that time a clear position with respect to the sale

process.

23. Subsequently, on April 23, 2015, LVTA offered $20,000 for the Equity Interest. See Exhibit A. That correspondence did not indicate an intention to object to the sale process. When the Trustee indicated that the offer was too low, LVTA, on April 30, 3015, increased its bid to $75,000.

24. In May, while preparing the sale motion, the Trustee again reached out to VMTAG and LVTA's counsel to ascertain what issues needed to be dealt with in the sale process. Again, VMTAG did not indicate at that time a clear position with respect to the sale process.

25. LVTA has intentionally allowed the Trustee to proceed with the sale process, without expressing its concerns or seeking to work with the Trustee to address any concerns while the Trustee was structuring the sale process.

26. Only after the Trustee had committed himself, did LVTA present its objections. Further, LVTA does not seek revisions to the sale process to address its issues, but instead asks the Court to simply deny the sale. The Trustee has contacted LVTA and attempted to negotiate revisions to the present sale process to address any concerns of LVTA, and LVTA has refused to discuss any modifications to the sale process that might allow a sale to the Buyer or a competitive auction. LVTA continues to insist on enforcing a non-existent right of first refusal.

27. LVTA's objections are not asserted to address legitimate concerns, but are a tactical maneuver to limit the Trustee's sale options and force the Trustee to

sell the Equity Interest to LVTA for less than its market value. *See, e.g. In re Chicago Investments, LLC*, 470 B.R. 32, 90 (Bankr. D. Mass. 2012)(discussing third party's lack of good faith in asserting right of first refusal under franchise agreement).

28.    Under these circumstances, LVTA's contingent counter-bid is not presented in the good faith that the bankruptcy process requires. Through its actions, it has taken "grossly unfair advantage" of the other bidder, and its bid should be struck. *See, In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993).

### The Counter-Bid Does Not Conform to the Sale Terms

29.    The sale notice requires that bids must be on "similar terms and conditions [to the sale agreement], other than the purchase price, with any required variations identified in the counter-offer."

30.    LVTA's bid is "contingent upon appropriate, mutually acceptable documentation…" and "subject to a mutually agreeable process and/or appropriate actions by you to ensure that the Minority Interest is purchased on a basis that will not leave it encumbered or otherwise subject to any claims of creditors (whether or not secured) of the Minority Interest Owner."

31.    The Sale Agreement and the sale process were designed to address the legitimate concerns of a buyer with respect to the deal. Additional protections should not be needed, and if LVTA believes it does need additional protections, it

needed to identify those protections in its counter-bid. The references to additional undefined processes or terms render the bid non-conforming.

Dated: June 16, 2015.

        Warren E. Agin, as Trustee,
        By his Attorney,

        /s/Warren E. Agin
        Warren E. Agin (BBO 554242)
        **Swiggart & Agin, LLC**
        197 Portland Street
        Boston, MA 02114
        (617) 742-0110 x203
        wea@swiggartagin.com

Exhibit A

Morgan, Lewis & Bockius LLP
399 Park Avenue
New York, New York 10022-4689
Tel. 212.705.7000
Fax: 212.752.5378
www.morganlewis.com

**Morgan Lewis**

**Steven Wilamowsky**
Partner
+1.212.705.7960
steven.wilamowsky@morganlewis.com

April 23, 2015

Warren E. Agin, Esq.
Swiggart & Agin, LLC
197 Portland Street
Boston, MA 02114

Re:   *In re William and Brenda Meara*, Case No. 14-12998-WCH

Dear Mr. Agin:

We represent Las Vegas Transit Advertising, LLC ("LVTA"), which is a 90% owner of Vector/Meara Transit Advertising Group, LLC ("VMTA"). We understand that, in your capacity as chapter 7 trustee for the above-referenced debtors, you are proposing to sell 100% of Meara and Company, Ltd. (the "Minority Interest Owner"), the owner of a 10% equity interest in VMTA (the "Minority Interest") pursuant to a court-authorized sale under section 363 of the Bankruptcy Code.

By this letter, LVTA advises you of its offer to pay $20,000 in cash upon closing for 100% of the legal and beneficial equity interest in the Minority Interest Owner, free and clear of any liens, claims, and encumbrances. The offer is contingent upon appropriate, mutually acceptable documentation and the securing of a final order in the debtors' chapter 7 case authorizing the sale of the Minority Interest Owner pursuant to section 363 of the Bankruptcy Code, in form and substance reasonably acceptable to LVTA (the "Order"), by no later than May 31, 2015, or such other date as may be subsequently negotiated and agreed to among the parties. The offer is also subject to agreement on a mutually agreeable process and/or appropriate actions by you to ensure that the Minority Interest is purchased on a basis that will not leave it encumbered or otherwise subject to any claims of creditors (whether or not secured) of the Minority Interest Owner.

It is LVTA's intention that its bid comply with the requirements of your notice of sale contained on your website (https://sites.google.com/site/aginassets/home/in-re-meara-soliciting-offers-to-purchase-interest-in-llc). If you have any questions or would like to discuss LVTA's offer or the sale process in any further detail, please call me at 212.705.7960.

Sincerely yours,

*[signature]*

Steven Wilamowsky